RECORD NO. 13-4491

# IN THE
# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

SAVINO BRAXTON,

*Defendant-Appellant.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

THE HONORABLE RICHARD D. BENNETT, USDJ, PRESIDING

---

**OPENING BRIEF OF APPELLANT
SAVINO BRAXTON**

---

Andrew R. Szekely
LAW OFFICES OF
ANDREW R. SZEKELY, LLC
7501 Greenway Center Drive, Suite 460
Greenbelt, Maryland 20770
(301) 358-1048 Telephone
andrew@aszekelylaw.com

*Counsel for Appellant*

July 14, 2014

# TABLE OF CONTENTS

Table of Authorities ....................................................................... iii

Subject Matter and Appellate Jurisdiction ................................... 1

Statement of Issues ........................................................................ 1

Statement of the Case .................................................................... 1

Statement of Facts ......................................................................... 3

    I.  The January 15, 2013, Motions Hearing .......................... 3

    II.  The February 11, 2013, Trial Date .................................. 4

    III.  The June 17, 2013, Sentencing Hearing ...................... 26

Summary of Argument .................................................................. 31

Argument ....................................................................................... 32

    I.  The District Court erred by improperly injecting itself in the plea negotiation process and by counseling Mr. Braxton regarding the plea offer ...................................................................................... 32

        1.  Standard of Review ..................................................... 32

        2.  Discussion ..................................................................... 33

    II.  The District Court committed plain error by accepting a guilty plea in this case where it later made a factual finding as to drug quantity that negated the drug quantity element of the offense to which Mr. Braxton pled guilty. ............................................................... 44

        1.  Standard of Review ..................................................... 44

2.   Discussion ........................................................................ 45

III.   The cumulative effect of the District Court's Rule 11 errors
impacted Mr. Braxton's substantial rights, even if each alone were
harmless. ............................................................................... 49

1.   Standard of Review ..................................................... 49

2.   Discussion .................................................................... 49

Conclusion............................................................................... 50

Request for Oral Argument..................................................... 51

Certificate of Compliance ....................................................... 52

Certificate of Service............................................................... 53

# TABLE OF AUTHORITIES

## Cases

*Alleyene v. United States*, 569 U.S. _, 133 S.Ct. 2151 (2013) ............................ 45

*Apprendi v. New Jersey*, 530 U.S. 466 (2000), ................................................. 9, 45

*Frye. Missouri*, 566 U.S. ___, 132 S.Ct. 1399 (2012) ................................. *passim*

*Lafler v. Cooper*, 566 U.S. ____, 132 S.Ct. 1376 (2012) .................................. 37

*United States v. Arteca*, 411 F.3d 315 (2d Cir. 2005) ........................................ 48

*United States v. Barrett*, 982 F.2d 193 (6th Cir. 1992) ..................................... 34

*United States v. Booker*, 543 U.S. 220 (2005) ................................................... 30

*United States v. Bradley*, 455 F.3d 453 (4th Cir. 2006) ........................... *passim*

*United States v. Bruce*, 976 F.2d 552 (9th Cir.1992) ......................................... 34

*United States v. Burgos*, 94 F.3d 849 (4th Cir. 1996) ....................................... 45

*United States v. Cannady*, 283 F.3d 641 (4th Cir. 2002) ................................... 34

*United States v. Casallas*, 59 F.3d 1173 (11th Cir.1995) .................................. 34

*United States v. Davila*, 568 U.S. ___, 133 S.Ct. 2139 (2013) ...... 32, 33, 44, 49

*United States v. Fernandez*, 145 F.3d 59 (1st Cir.1998) ................................... 49

*United States v. Hyde*, 520 U.S. 670 (1997) ...................................................... 48

*United States v. Martinez*, 277 F.3d 517 (4th Cir. 2002) ............... 44, 47, 48, 49

*United States v. Mitchell*, 104 F.3d 649 (4th Cir. 1997) ..............................44, 45

*United States v. Munoz*, 150 F.3d 401 (5th Cir.1998) ....................................... 49

*United States v. Olano*, 507 U.S. 725 (1992) ........................................... 45

*United States v. Partida-Parra*, 859 F.2d 629 (9th Cir. 1988) ........................ 47

*United States v. Promise*, 255 F.3d 150 (4th Cir. 2001) (en banc) .................. 47

*United States v. Rivera*, 900 F.2d 1462 (10th Cir.1990) ................................. 49

**Statutes**

18 U.S.C. § 3231 .................................................................................... 1

18 U.S.C. § 3553 .................................................................................. 30

21 U.S.C. § 841 ................................................................................. 1, 2

21 U.S.C. § 851 .................................................................................... 2

28 U.S.C. § 1291 .................................................................................. 1

**Other Authorities**

Advisory Committee's 1974 Note on Subd. (e)(1) of Fed. Rule Crim. Proc.

   11 ................................................................................................. 33

**Rules**

Fed.R.Crim.Proc. 11 ..................................................................*passim*

## SUBJECT MATTER AND APPELLATE JURISDICTION

The District Court had jurisdiction over this matter pursuant to 18 U.S.C. § 3231. Final judgment was entered on June 18, 2013. This Court has jurisdiction pursuant to 28 U.S.C. § 1291. Mr. Braxton noted a timely appeal in this case on June 26, 2013.

## STATEMENT OF ISSUES

Whether the District Court erred by improperly injecting itself in the plea negotiation process and by counseling Mr. Braxton regarding the plea offer?

Whether the District Court committed plain error by accepting a guilty plea in this case where it later made a factual finding as to drug quantity that negated the drug quantity element of the offense to which Mr. Braxton pled guilty?

Whether the cumulative effect of the District Court's Rule 11 errors impacted Mr. Braxton's substantial rights, even if each alone were harmless?

## STATEMENT OF THE CASE

On September 3, 2009, Appellant Braxton was charged by complaint with Possession with Intent to Distribute Heroin, in violation of 21 U.S.C. § 841(a). He was temporarily detained and later released on conditions to pretrial supervision. The release order included a condition that Mr.

Braxton reside at a halfway house. A grand jury sitting in the District of Maryland returned a one-count indictment on September 9, 2009. The indictment charged Mr. Braxton with Possession with Intent to Distribute One Kilogram or More of Heroin, in violation of 21 U.S.C. § 841(a)(1). JA at 12.

On March 1, 2010, the Government moved to revoke Mr. Braxton's pretrial release because he failed to return to the halfway house following a medical appointment. JA at 22–24. The District Court granted the motion that day. JA at 25. On August 17, 2012, the outstanding warrant for Mr. Braxton's arrest was executed and he was returned to custody.

On November 19, 2012, the Government filed notice pursuant to 21 U.S.C. § 851 that it intended to seek an enhanced mandatory-minimum sentence of 20 years' incarceration, based on Mr. Braxton's prior conviction for a felony drug offense. JA at 56–57.

The District Court, the Honorable Richard D. Bennett presiding, convened pretrial motions hearings on December 12, 2012, and on January 15, 2013. JA at 86–296. On February 11, 2013, Mr. Braxton appeared before the District Court for trial. JA at 230–304. At that time, Mr. Braxton entered into a written plea agreement, JA at 221–229, with the Government and changed his plea as to the sole count to guilty. While

pending sentencing, Mr. Braxton filed a *pro se* motion to withdraw his plea of guilty. JA at 309–315.

On June 17, 2013, the Appellant appeared for sentencing. JA at 315–368. The District Court denied the motion to withdraw the guilty plea. It then imposed a sentence of 138 months' incarceration to be followed by 5 years of supervised release. The District Court entered its judgment on June 18, 2013. JA at 368–73. Mr. Braxton noted a timely appeal on June 26, 2013. JA at 374–76.

## STATEMENT OF FACTS

### I.  The January 15, 2013, Motions Hearing

At the pretrial motions hearing, the District Court addressed two matters relevant to the issues raised in this appeal: (1) A substantive motion to suppress fruits of a search warrant and (2) Mr. Braxton's *pro se* motion to strike the Government's § 851 notice. As to the suppression motion, the trial court heard evidence from two law enforcement officers and argument from both parties. JA at 127–83. The particulars of the testimony are not germane to the issues on appeal. At the close of argument, the District Court made factual findings and denied the motion. JA at 184–190.

On the § 851 notice, the District Court first clarified the Government's position, namely that even though the notice had been filed, it would withdraw the notice in the event Mr. Braxton decided to plead

guilty. JA at 192. The District Court then found that the Government was not motivated by vindictiveness in filing the motion and accordingly denied Mr. Braxton's motion. JA at 195.

## II. The February 11, 2013, Trial Date

On February 11, 2013, the parties appeared before the trial court ready to start trial. JA at 231–234. Prior to beginning jury selection, the Government asked to place the final plea offer on the record and was permitted to do so. JA at 233. The plea offer was as follows:

> MR. PURCELL: In this particular case, the government has made a plea offer. I am going to memorialize it. I'm not asking for the Court to engage, of course, in any aspect of this. But I want to memorialize it for the record. The government has made a written plea offer in a letter dated, I think, yesterday or today, to the defendant. I know that while the defendant's been sitting here in court with his attorney he's had an opportunity to review that with him. He's rejected it. I just want to put that on the record. If the Court would allow, I'll just quickly state what the terms are so there is no question later.
>
> At the outset, the framework that we're working with is that the defendant is charged, as you've noted, Your Honor, in a one-count possession with intent to distribute heroin, where the amount is specified as one kilo or more. The maximum sentence for that, of course, is life. Minimum mandatory for that sentence, for that offense is 10 years. The government has filed, as has already been recorded, a notice under Section 851 because of Mr. Braxton's prior federal conviction, for which he served 17 years, I might add, for the

same offense, conspiracy to distribute heroin. I've actually explained to the defendant today –

THE COURT: Is that a 17-year federal sentence?

MR. PURCELL: Yes.

THE COURT: From this court?

MR. PURCELL: Yes.

THE COURT: Okay.

MR. PURCELL: Here or, I think it was here or in DC. It was federal. But I've actually – before Judge Kaufman, yes. I've actually explained, reiterated to the defendant today, with his attorney here, in the event he's convicted of this count as charged with that amount, the Court will have no option except to impose a sentence of 20 years. The terms of the plea agreement that are offered cap the government's recommendation, recommendation at 180 which is 15 years. The defendant is free to argue for as low as 10 years and free to argue for acceptance of responsibility up to two levels. The government would oppose an adjustment for acceptance of responsibility in light of his flight several years ago, which is why we're doing that. But the defendant has expressed to me and to his attorney, both of us here in court, that he's not interested in that, wishes to proceed to trial. I just wanted to memorialize that.

THE COURT: All right. Fine. Is that correct, from your point of view? That's the offer that was made, Mr. Tuminelli?

MR. TUMINELLI: It is.

THE COURT: Mr. Braxton, if you'll stand. Just so you understand, as a matter of law, we have to make sure that you're aware of the plea offer.

There is a minimum mandatory sentence ordinarily in this case, if you're convicted, of 10 years. Because the government has filed an enhancement notice under Section 851, if you're convicted of this offense you have a mandatory minimum of 20 years. Do you understand that, sir?

THE DEFENDANT: Yes, sir.

THE COURT: There's no discretion by me. I obviously cannot sentence you to one day less than that by law. I'm not allowed to. Do you understand that?

THE DEFENDANT: I understand that.

THE COURT: Okay. All right. And the plea offer has been that, if you plead guilty – and again, I'm not negotiating the plea offer, I am just trying to make sure you understand what's before you – the government was prepared to have you plead guilty, essentially withdraw the 851 notice. Correct, Mr. Purcell?

MR. PURCELL: Yes.

THE COURT: All right. And then the government would argue for a sentence of 15 years. But Mr. Tuminelli would be free to argue for less than 15 years, down to no more than 10 years because, again, even under the plea offer, you have to serve at least 10 years. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: I'm sorry?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. And you discussed that with Mr. Tuminelli?

THE DEFENDANT: I did but it was initially –

THE COURT: I don't want to discuss your conversation with your lawyer.

THE DEFENDANT: Exactly.

THE COURT: Or merits. I just want to make sure you're aware of the plea offer. Correct, sir?

THE DEFENDANT: Exactly.

THE COURT: Okay. All right. Are you under the influence of any drugs or any alcoholic beverage of any kind this morning?

THE DEFENDANT: No, sir.

THE COURT: Okay. And you're ready to proceed to trial, is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. All right. Well, that's fine. The record will reflect you've been so advised of the plea offer in this case. The defendant is ready to proceed to trial. You may be seated.

JA at 234–38.

Following that colloquy, Mr. Braxton renewed an earlier motion to represent himself at trial. JA at 239. The trial judge and Mr. Braxton had a lengthy discussion regarding the performance and duties of trial counsel. JA at 239–59. At the end of the discussion, trial counsel placed the following on the record:

> With regard to the offer of the plea agreement today, I believe under [*Frye. Missouri*, 566 U.S. ___, 132 S.Ct. 1399 (2012)] I have an obligation to say, yes, I did present it to him. And I've told him not only today, but before today. But it is my recommendation, as his lawyer, that he should seriously consider accepting that plea. I certainly don't want it on the record that, that I was noncommittal about the value of that plea agreement to him. My recommendation was and is that he should have accepted it. Thank you.

JA at 259–60.

After trial counsel placed his statement regarding the advisability of guilty plea on the record, the trial court summarized the plea offer as well as the consequences of a trial to Mr. Braxton:

> Let me just note, for the record, on this, Mr. Braxton, before you speak, that this is really not that complicated. And I am not part of Rule 11 negotiations here. This is not that complicated. If the plea that was presented to you this morning were to be accepted and you faced a 10-year mandatory minimum and not, and not a 20-year mandatory minimum, if you were to be convicted by the jury, and if the government argues for 15 years and your lawyer argues for the 10-year mandatory minimum, the matter of drug quantity, the matter of drug quantity is an issue that can be addressed by the Court, Mr. Braxton. The Court listens to testimony that's presented. The standard is by a preponderance of the evidence.

JA at 260.

The District Court confirmed with both counsel that it was correct as to the standard of proof for determining drug quantity at sentencing and

8

further explained to Mr. Braxton, with the assistance of counsel, how a sentencing court approaches the issue of drug quantity:

> THE COURT: All right. By a preponderance of the evidence. It's not as heavy a standard as beyond a reasonable doubt. But it's by a preponderance of the evidence. Quite frankly, just so you understand, the record should reflect I am not irritable at you, we are not yelling at each other, I told you not to interrupt me while I'm talking. But my point is, is that the issue of drug quantity is sometimes addressed by the Court at sentencing. And the government presents evidence as to drug quantity.
>
> There are other cases where people come forward before this Court for sentencing and the issue is, in fact, drug quantity. Correct, Mr. Purcell?
>
> MR. PURCELL: Your Honor, I just want to be clear, post [*Apprendi v. New Jersey*, 530 U.S. 466 (2000)], the jury would have to find, the triggering amount for minimum mandatories are found beyond a reasonable doubt. So the amount at issue here is whether or not this amount was one kilogram or more. That finding as to one kilogram or more –
>
> THE COURT: Would have to be made by the jury or by me.
>
> MR. PURCELL: Or by the Court beyond a reasonable doubt.
>
> THE COURT: I stand corrected. At a sentencing hearing, though, the Court can still make that determination.
>
> MR. PURCELL: Yes.

MR. TUMINELLI: For purposes of the guidelines, the Court would make the determination of the actual quantity.

MR. PURCELL: A sentencing hearing? No. After a trial, the jury makes that determination.

THE COURT: Well, my point is this, though. So he understands the plea offer before him. Can he not challenge drug quantity at the sentencing?

MR. PURCELL: He can challenge drug quantity under the guidelines. He cannot challenge drug quantity – well, he's challenging the drug quantity at the trial. The jury makes a finding of one kilo, they must find that. And only the jury will find that beyond a reasonable doubt as to one kilo.

Now, if there was some other issue, and there isn't really an issue as to whether he's a Level 32, which that is, or a Level 38 or a Level 40, that would be something that the government would have to prove beyond that by a preponderance of the evidence and he would be able to contend that.

If he pleads guilty – the only way he would be able to contest the drug quantity is if the government were to modify, as I'm just thinking out loud, strike the quantity language and just proceed on sentencing on the guidelines as to a minimum mandatory. That is –

JA at 260–262.

The trial court then, while stating "I am not part of the plea negotiations", asked the parties whether some procedure was available that would permit Mr. Braxton plead guilty to a heroin offense, but leave the entire issue as to drug quantity, including whether a mandatory minimum

applied, to the trial court's determination. JA at 262–64. Defense counsel

appeared to approve of that procedure, but Government counsel stated that

the trial court's suggested procedure was not possible given the way the

indictment was drafted. *Id.* The District Court then addressed Mr. Braxton:

> THE COURT: Sure. Mr. Braxton, stand up for a minute. Just stand up for a minute. What I am trying to do, sir, is I am trying to accord you your rights. I understand what your position is, is that your attack on your lawyer, your desire for self-representation is getting to the matter of drug quantity. And that's essentially the nub of what your problem is here this morning. Correct?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: All right. I'm trying – just be quiet. I am trying to address this from the point of view, one, in terms of court efficiency. But more importantly, in terms of your fundamental rights. It's not, it doesn't give me great comfort to watch a defendant essentially acknowledge, as you have here today, unsolicited by me and voluntarily, you just all of a sudden blurted out that you're guilty, without any even advice of rights having been given you. So that makes me uncomfortable in the first place.
>
> But the second place is that if it's just a matter of drug quantity, I am not favorably inclined towards having you go to trial and trigger a mandatory minimum of 20 years, as opposed to a plea offer that's down in the 10 to 15 year range in terms of years of your life. I am trying to at least have the lawyers understand my perspective on how this can be approached if that's the case.

> And that's not to say, Mr. Braxton, that I don't have, I have a hearing and I determine, to your displeasure, that there's a certain amount of drugs involved. If that's really the nub of it, I'm trying to make sure the lawyers have explored avenues here that address that. That's the whole point of the conversation here. Do you understand what I'm saying to you?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Okay. Don't blurt out any more about, about – that would not be admissible against you here if you go to trial, that you blurted this out about your guilt on the matter of heroin. Just don't go into all that. But do you understand what I am trying to address here?

JA at 264–65.

Mr. Braxton then expressed further complaints regarding his relationship with trial counsel. JA at 266. In the course of voicing those complaints he stated, "And I said [to trial counsel], Man, look, this is what I'm going to do. I am not even going to try to go to trial. I said what I am going to do is just plead guilty. I want to try to get the 10 years that Judge Bennett was talking about." *Id*. The trial court then responded with the following:

> THE COURT: Mr. Braxton, you're hurting your own interest. I understand what you're saying. I have the thrust of it. You sit down for a minute. I have the thrust of what you're saying.
>
> The simple fact of the matter is is that, in light of the fact you've already served a 17-year federal

prison sentence for the identical offense, and now you're back before me again being charged with possession with intent to distribute heroin, in terms of the guidelines, the whole issue here about going to trial and doubling a mandatory minimum, where I have no discretion, from 10 to 20 years, seems to me to just be, just almost silly when you're in a potential range of 10 to 15 years. And I haven't run a guideline calculation.

But in terms of this offense and being a recidivist offender, if you are convicted of that, either by guilty plea or by a jury, you're going to face a certain range, anyway. So I am looking at a situation where we're just talking about drug quantity, and you're giving up a range here over drug quantity.

Under the cases that I've cited, and the thing that's troubling the Court, for the record, is, under the cases that I've cited as to self-representation, it not only must be clear and unequivocal, but it must be knowing and intelligent, apart from timely. It's not knowing and intelligent in terms of what we're facing here with respect to this matter.

There's a far more sensible way to approach this, it seems to me, that justice can be done. And I certainly may find since you're not pleased, from a credibility point of view, Mr. Braxton, but I understand what the issue is that you're raising.

JA at 267–68.

Defense counsel added that he had explained to Mr. Braxton that even if he successfully convinced the jury that the offense involved less than a kilogram of heroin, the previously filed § 851 notice would result in a

sentence of 10 years' incarceration. JA at 268–69. After hearing trial counsel explain that, the District Court again addressed Mr. Braxton:

> THE COURT: Stand up, Mr. Braxton. Stand up.
>
> THE DEFENDANT: Excuse me.
>
> THE COURT: Go ahead.
>
> THE DEFENDANT: If that's the case, why is it so for me to plead guilty to the 10 years? If I could guilty to the 10 years, we wouldn't be here right now.
>
> THE COURT: Mr. Braxton, I'm not sure you understand the plea offer made to you. You can plead guilty to the 10 years. The plea offer here –
>
> THE DEFENDANT: That's not the crux of the guilty plea.
>
> THE COURT: No, no. The plea offer here is that you, that you can plead guilty and that the government is going to argue that you get 15 years. And your lawyer is free to argue that you get 10 years.
>
> THE DEFENDANT: Exactly.
>
> THE COURT: My point is, then what –
>
> THE DEFENDANT: That's not – like I was telling Mr. Purcell –
>
> MR. PURCELL: Before he fled, Your Honor, he had agreed today a (c) plea to 10 years.
>
> THE COURT: Right.
>
> MR. PURCELL: And I told him, sorry, that's not available to the guy who takes off for two years.

14

THE COURT: Mr. Purcell, correct me if I'm mistaken. Under the − what is the key Supreme Court opinion in terms of information as to the plea offer? I'm sorry. I'm drawing a blank.

MR. PURCELL: *Frye v. Missouri.*

THE COURT: *Frye v. Missouri* within the last two years.

MR. PURCELL: Yes. 2012. Last year.

THE COURT: *Frye v. Missouri*, the Supreme Court opinion. Make sure you understand the plea offer before you, Mr. Braxton. You are free to argue for that. The government would come in here and argue for 15 years. They'll probably argue that you could have had 10 years but you fled for two years, and that, therefore, you should get a 15 year sentence.

But Mr. Tuminelli is free to argue for 10 years. And I am not bound by a mandatory minimum. If the jury convicts you of one kilogram or more, I have no discretion. I have to sentence you to 20 years in prison with no discretion. I have no choice. That's required by law.

Under this plea agreement, you plead guilty, if you were to plead guilty and accept the plea agreement − again, I am not part of the negotiations on this. Under Rule 11, I am not to be part of it. I am not. I am just trying to make sure the record is clear under *Frye v. Missouri* that you understand the plea offer to you.

The plea offer is you plead guilty to this particular charge, that it goes with the drug quantity that you've essentially had issue with. But the government will argue that you should get a 15 year sentence. And Mr. Tuminelli can argue that you could get a 10 year sentence. And I am free to

15

determine where in the 10 to 15 year range you should be sentenced. And I am free to sentence you to 10 years. Correct, Mr. Purcell?

MR. PURCELL: Exactly.

THE COURT: All right. That's the plea offer. Mr. Tuminelli may or may not prevail on that. And I am then free to inquire at sentencing in terms of drug quantity, whatever. But you pled guilty to the particular charge. Even if you went to trial over 100 grams and not 1 kilogram, if the jury convicted you, because of the notice for an enhancement, the mandatory minimum is doubled from five years to ten years. I am tying to make sure you understand the scenario. Do you understand the scenario?

THE DEFENDANT: Yes.

THE COURT: I'm having a hard time understanding how you, in making a knowing and intelligent rejection, under *Frye v. Missouri*, the Supreme Court opinion, in light of this scenario. And I am trying to be as fair to you as I can so that you don't put your head in a buzz saw that makes absolutely no sense.

Do you understand what I'm trying to say to you?

THE DEFENDANT: Correct.

THE COURT: All right. Okay. So maybe we need to take a recess. You talk to Mr. Tuminelli some more on this.

I have no difficult – Mr. Braxton, I am not upset with you in the least on this. And I understand the government's point of view, that you absconded for two years and you fled. That doesn't help you. But that, in and of itself, is not going to have me make a determination per the sentencing per se. I

have to hear what each said has to say. And there's a Presentence Report and I look at it. And then we have a sentence.

So what I am trying to avoid is because of your strong feeling over drug quantity, that you drive yourself in a direction that is really not in your interest. And that's the whole point of my speaking to you.

Do you understand?

All right. So with that, Mr. Tuminelli, do you think it might be worthwhile to take a recess here for a few minutes?

MR. TUMINELLI: It would. Could I just shed one more piece of information on this whole notion of where he is and what's causing him to not have accepted the plea at this point?

Your Honor, Mr. Purcell and I did look at these guidelines several times.

MR. PURCELL: Millions of times.

MR. TUMINELLI: Pardon?

MR. PURCELL: Millions of times,

MR. TUMINELLI: His base offense level for the kilo is a 32. Right now he's got, he's got to get two levels for obstruction for absconding.

THE COURT: Right. yes.

MR. TUMINELLI: So he's at 34. Mr. Purcell has agreed that I could argue for a two-level downward adjustment for acceptance of responsibility.

THE COURT: And the government can oppose it.

MR. TUMINELLI: And if he got that, he's back to a 32. But here's the important thing, Your Honor. He's concerned that, that, well, and I know the Court's not part of any of the plea agreement, but his concern is that he may not get that two levels. What I've told him is, is that given that he's had this drug argument all along, he didn't fail to plead guilty because he didn't, he was contending he wasn't, he was not guilty. He simply didn't want to plead because he wanted to argue about drugs.

THE COURT: I understand.

MR. TUMINELLI: So it may be, may be – I don't know what the Court could do – but the Court could very well give him, you know, the two levels for acceptance. If it did, his guidelines would go to a low end of 135 months, 11 years and 3 months. But the Court, again, has a right to do a variance, given all the time this man spent in jail.

So I told him, you know, in my opinion, Judge Bennett –

THE COURT: Well, I don't want to go too deep into Rule 11 proceedings, if there are Rule 11 proceedings, Mr. Tuminelli. I think we've set the stage here.

The defendant understands what the ranges are. I understand what his issue is. I've done the best I can do.

MR. TUMINELLI: You have.

THE COURT: In a not timely fashion, someone says he wants to represent himself, which would

18

be catastrophic for him. I don't think it's a knowing and intelligent decision, particularly in light of the nature of what the dispute is here.

I understand what the government's offer is. It's been communicated to him. I understand what the ranges are. And it's very clear to me.

We come back, we get all the information we can on drug quantity. Then the government argues for a 15 year sentence. You argue for a 10 year sentence. And I determine what the sentence will be. I have to give him 10 years because it would be the mandatory minimum. But that would be the same thing if he went to trial and a jury convicted him with an enhancement notice.

So, to me, this matter's been crystallized as best as it can be to give the defendant an opportunity to make a knowing and intelligent decision. It seems to me we should take about a ten minute recess.

Do you agree with that, Mr. Purcell?

MR. PURCELL: Yes, Your Honor.

THE COURT: I think the court reporter needs a 10-minute recess. Mary, how are you doing down there?

You talk to your lawyer about it, Mr. Braxton. I am not upset with you, Mr. Braxton. I am not arguing with you. We can have a trial. I'll do my very best to give you a fair trial. But I owe it to the justice system to make sure you're making a knowing and intelligent decision, one that's not timely in terms of representing yourself. But secondarily, in terms of the issue you're raising can be addressed in another context. It doesn't need to be addressed in terms of a jury trial, where you face the potentiality of a 20-year

minimum mandatory where my hands are tied and
I can't sentence you to less than that.

JA at 269–76.

Following a brief recess, court resumed session with the District

Court stating the following:

> THE COURT: We're back on the record here in
> this case. Counsel, first, I just tried to get a status
> report from counsel because Rule 11 doesn't
> permit me to be part of plea negotiations. I'm
> trying to make sure the defendant understands
> the plea offer that's been placed before him,
> consistent with the principles in *Frye v. Missouri*,
> and also make sure that there's some knowing and
> intelligent decisions being made here.
>
> From the point of view of the government or
> defense, have I invaded in any way the Rule 11
> procedures in terms of plea negotiations, from the
> point of view of the government?
>
> MR. PURCELL: No, Your Honor.
>
> THE COURT: From the defense?
>
> MR. TUMINELLI: No, Your Honor.
>
> THE COURT: Now, here's what I'm going to do.
> The jury's been here for a while, Mr. Braxton. I
> want to give you You're going to have time on the
> lunch hour, Mr. Braxton, to reflect on this. You
> don't make any statement to me. You talk to Mr.
> Tuminelli. You reflect on this, okay, because of
> the implications of the plea offer that's before you.
>
> I understand the context of this. I deal with, I deal
> with drug quantity issues all the time at
> sentencing, in terms of the government having
> one position in terms of what the sentence should

> be and drug quantity, and the defendant having
> another. And that's nothing unusual about that.
> Nor should a defendant be punished with respect
> to the matter of drug quantity. You're perfectly
> free to raise those issues.
>
> But a defendant shouldn't put his head in a vice
> and face a catastrophic result just over a dispute
> over drug quantity. That's the point.
>
> So we're going to take a break now for 45 minutes
> for lunch. You will be back here in court at
> quarter of one. Then you will tell me what you
> want to do. Either you want to go forward with a
> trial or you don't. If you want to go forward with
> a trial, we'll have one, the jury's here. If you don't,
> we'll take the other steps.

JA at 276–78.

Following that statement, the trial court adjourned for a lunch
recess. During the recess, the parties informed the court that they had
reached a plea agreement. The District Court resumed the case by stating
the following:

> Under Rule 11 of the Federal Rules of Criminal
> Procedure, I'm not part of the plea agreement
> process, Mr. Braxton. But I've taken great pains
> here today to make sure you understand the
> process, given that you indicated your,
> gratuitously you just mentioned during the
> proceedings this morning that you were guilty of
> the offense and were concerned about drug
> quantity. As I said, that's a matter I'll address at
> sentencing.

JA at 279.

Mr. Braxton was then placed under oath and the court began a plea colloquy. JA at 279. During the colloquy, the trial court made several comments regarding the proceedings that led to Mr. Braxton's decision to plead guilty. For example, when asking whether he was satisfied with defense counsel, the trial court asked Mr. Braxton, "As you now proceed to a guilty plea in this matter and await sentencing before me on this charge, Mr. Braxton, particularly after I've addressed the issue of drug quantity, are you fully satisfied with Mr. Tuminelli and his representation and the advice which he's given you in connection with this guilty plea?" JA at 281–82. Mr. Braxton stated the he was. *Id.*

Next, in explaining to Mr. Braxton that the trial court was not a party to the written plea agreement, it said, "And again, I've made comments to you so you understand the scope of the plea agreement that was before you and my concern over your unwisely proceeding to trial before a jury, in light of your acknowledgments to me. But I am not a party to the agreement." JA at 284. Finally, the trial court engaged in the following exchange with Mr. Braxton:

> Q I want to emphasize here, for purposes of proceeding, have you felt forced or threatened terms of a guilty plea in this case?
>
> A No, sir.

Q Okay. I just want to make sure the record is clear. I wanted to make sure you carefully understood the ramifications of the plea agreement, particularly in light of the acknowledgment you made of your guilt and your concern over the drug quantity. I was trying to make sure that you didn't unnecessarily jeopardize yourself. Do you understand that?

A Yes.

Q Do you understand?

A Yes.

Q All right. Do you feel like I forced you or threatened you in any way?

A No, sir.

Q Because I wasn't trying to. I was just trying to make sure you understood the implications of everything here before the Court would be put in a position of a mandatory minimum sentence of some 20 years, which would have taken place if you had gone to trial and if you had been convicted, and I say "if you had been convicted", by a jury. Are you pleading guilty on your own freely and because you are, in fact, guilty of the charge of possession with intent to the distribute heroin?

A Yes, sir.

JA at 285–86.

The District Court later turned to the Government for a statement of facts in support of the plea. The Government placed the following factual basis on the record:

23

The facts essentially are that the arrest of the defendant in this case was preceded by a controlled drug payment of $2200 to Mr. Braxton by a cooperating source of information, referred to as a CI, on July, that should actually be July 30th, Your Honor. I see it says 20th. I just noted that.

At any rate, there was a controlled payment. And then on July 30th, on July 30th, and a controlled purchase of 50 grams of heroin from Mr. Braxton by the CI on August 18th, 2009.

The heroin purchased by the CI occurred inside an apartment used by the defendant at 5312 Goodnow Road, Apartment I, located in Baltimore County, Maryland, which Mr. Braxton and the CI were observed entering together after Braxton arrived for the meeting in a maroon 1999 Honda.

Following these two drug-related transactions between the CI and Mr. Braxton, a federal search warrant was obtained for 5312 Goodnow Road, Apartment I. On September 2nd, 2009, at about 5 p.m., DEA TFO Dave Phillips observed Braxton exit Goodnow Road and enter the maroon 1999 Honda. Braxton then drove from a parking lot near the 5000 block of Sinclair Lane, where he was arrested.

Agents recovered 28 grams of heroin in the center console of the maroon 1999 Honda, which they referred to as Exhibit 6. That is the heroin.

Keys recovered from Mr. Braxton were used to enter 5312 Goodnow Road, Apartment I, in which the following evidence was recovered: $4270 from the kitchen pantry; a drug tally sheet bearing Mr. Braxton's name; a BGE utility bill for that apartment in Mr. Braxton's name. They found Item N–6, a green tote bag, found in the pantry. It contained four bottles of mannitol, a box of plastic

bags and gloves. A bottle of quinine, a shoebox containing gel caps, strainers, a digital scale, and a bus ticket in Mr. Braxton's name were also recovered in a kitchen cabinet. A second scale was also found in the pantry.

The following packages of heroin were also recovered inside the apartment. In the pantry, two bags containing 500 grams of heroin, net. These are all net weights. In the kitchen stove, 464 grams of heroin net weight were found in pelletized form. And 40 grams of heroin was found in the kitchen cabinet.

A total of over 1000 grams of heroin was recovered on September 2nd, 2009.

That's the statement of the summary of the evidence the government would have presented at trial.

JA at 301–303

Having heard the statement of facts and having reviewed Mr. Braxton's trial rights, sentencing procedures, and other components of the plea agreement, JA at 279–300, the District Court made the following findings:

It is the finding of this Court in the case of United States versus Savino Braxton, Criminal Number RDB–09–0478, that the defendant is fully competent and capable of entering an informed plea, and that the defendant is aware of the nature of the charges and the relevant consequences of his plea of guilty. And the Court further finds that the defendant is not only aware of the nature and the consequences of his plea, but further finds that his plea of guilty, on the advice of competent counsel with whose services he is satisfied, is a

knowing and voluntary plea supported by an independent basis in fact sustaining each of the essential elements of the offense. The plea is to be accepted and the defendant is now adjudged guilty of the offense as set forth in the one-count indictment; specifically, guilty of possession with intent to distribute one kilogram or more of heroin, in violation of 21 United States Code Section 841(b)(1)(a).

JA at 304.

### III. The June 17, 2013, Sentencing Hearing

When Mr. Braxton appeared for sentencing on June 17, 2013, the trial court first addressed the *pro se* Motion to Withdraw Guilty Plea that Mr. Braxton had filed while pending sentencing. JA at 309–14. The District Court denied the motion. JA at 317. It then engaged Mr. Braxton in further argument regarding the motion, which included Mr. Braxton stating the following about his view of the events leading up to his guilty plea on February 11, 2013:

> THE DEFENDANT: ☐ I was eager to go to trial. And Your Honor had a recess, you went in the back. And when you came back out, you told us to go and talk it over again. And at that juncture I went out and I thought it over with myself. I came back, and – but you had said something at that point and time that really encouraged me to plead guilty. And we was talking about going to trial, told you I said I wanted to go to trial, because I wanted to challenge the validity of the drug it was – do that.

THE COURT: And I told you you're perfectly free to do that.

THE DEFENDANT: Okay. You told me I was free to do that. But at the time, in the same vine [sic] you said, well, why would you go to trial and do that when you can come here and get the same thing done. So in my mind I'm thinking that — no, and then Mr. Tuminelli said, well, if he gets the five-year mandatory minimum, if he go to trial and he get be exposed to a five year mandatory minimum — ten years.

THE COURT: If you go to trial in this case —

THE DEFENDANT: — file a 851 and I would still get

THE COURT: No, no, hold on. This —

THE DEFENDANT: I'm just reiterating the conversation.

THE COURT: I understand.

THE DEFENDANT: Okay. At that juncture you said, well, why would you go to trial to do that, don't put your head in the vice, you could come this way and get it done. In my mind I'm thinking, okay, well, I might be exposed to the ten years. But when I look at the plea agreement and it's reduced to writing, it's 14 to 15 years, or whatever that range is right there. So that's what made me kind of set back and reserve and re-evaluate the contents of the plea. You know, I'm telling you, this is what exactly happened. That's why I basically took the plea.

THE COURT: All right. Here's — very simple. Even now, you're not — I put you under oath and you acknowledged your guilt. And even now

27

you're not asserting your legal innocence, correct, Mr. Braxton?

THE DEFENDANT: That's because –

THE COURT: Just answer my question, sir. Just answer my question. I put you under oath and you swore under oath. And the only thing I said was you're free to raise this, and you still are at sentencing. You're free to raise drug quantity here today. And you're free to do that. All of your papers are asking for –

THE DEFENDANT: The drug quantity was –

THE COURT: Mr. Braxton, I've been very patient with you here, but here's the deal: You have gamed system for three years. The record should reflect if there's ever a defendant who gamed the system and played the game, you played the game and the game is up. You left – you were permitted to be released on your own personal recognizance and you fled on March 1, 2010. You never turned yourself back in. You were a fugitive in this metropolitan area for two and a half years and you were arrested on August the 17th of last year, 2012. There was no –

THE DEFENDANT: – but the plea was involuntary –

THE COURT: It wasn't involuntary. You were arrested because they caught you. It's just simple as that.

THE DEFENDANT: But when I took the plea it still had to be voluntary.

THE COURT: I know that. I know that. I'm talking about the overall – so the record is abundantly clear on this, in terms of a defendant who is moving every which way he can, I didn't

28

have you plead guilty because you wanted to, quite frankly, Mr. Braxton, I was ready to start a trial. The lawyers came back and talked to me. And I came out here realizing that you're about to put your head in a vice and an 851 notice was going to be filed, correct, Mr. Purcell?

MR. TUMINELLI: It was filed.

THE COURT: It was filed, and he would have faced a 20-year mandatory minimum.

MR. PURCELL: He still does.

THE COURT: Would have faced a 20-year mandatory minimum. And the whole point, and clearly you were not disputing your guilt, it was your matter of concern for drug quantity. So in fairness to you, recognizing that, I indicated to you that you were certainly free to raise that issue at sentencing, which you are free to do today.

And then you were placed under oath, and very carefully you acknowledged facts which established your guilt. And there is not a scintilla of evidence on the record in this case that would in any way question the fact that you were guilty of the offense.

THE DEFENDANT: I'm not disputing it.

JA at 329–332.

The District Court then once more denied Mr. Braxton's motion and proceeded to sentencing. JA at 333. First, the District Court adopted the Presentence Report's finding that a base offense level of 32 applied, due to the weight of the heroin in the case being over a kilogram, but less than 3 kilograms. JA at 340, 382. Next it, it found that a 2-level upward

enhancement was merited because Mr. Braxton obstructed justice by absconding from pretrial release. *Id.* The terms of the plea, as noted by the trial court, permitted Mr. Braxton to argue that he should receive a 2-level downward adjustment for accepting responsibility by entering a guilty plea. JA at 340. Next, the trial court agreed with the Presentence Report that Mr. Braxton's Criminal History Category was II. JA at 342, 385.

The trial court then heard argument from the parties on whether the adjustment for acceptance of responsibility applied. JA at 343–46. After hearing from both parties, the trial court denied the motion and left the total offense level at 34. JA at 347–48. The advisory sentencing guidelines range was therefore 168–210 months' incarceration. JA at 348.

The trial court then turned to evaluating the case under the factors laid out in 18 U.S.C. § 3553(a). Specifically relevant to the issues raised in this appeal, the trial court stated the following in support of its ultimate sentence of 138 months' incarceration:

> I'm not only not assuming that the guideline range is reasonable, but I think here, really the realistic way to approach this is that what has always driven this defendant has been a concern over the drug quantity, which is just right on the borderline between 1 kilogram of heroin and less than 1 kilogram. And I think in fairness to him, and without getting into all the details of the conviction back here in 1991, as reflected by the prior conviction before Judge Kaufman of this court, that he has a -- he has been hit pretty hard

30

by the guidelines. And in those days there was a --
in 1991 there was -- well before ⌈*United States v.
Booker*, 543 U.S. 220 (2005)⌉ -- there was a fairly
Draconian imposition of the guideline tables.

Without getting into the whys and wherefores of
his relationship with many of these other well-
known criminal defendants, I'm familiar with that
case. And I look now at the situation here, and
once again he seems to be getting a little bit heavy
leverage with respect to the guideline calculation.

I think a more realistic guideline calculation
would be 700 grams, but less than 1 kilogram of
heroin. So not the 1 kilogram. And I think the
more reasonable range under the guidelines
would more realistically be 32 -- total offense
level 32, criminal History Category of II, a range
of 135 to 168 months. I think that's the more
realistic range in this case. So I – that's how I
approach the guideline range, first of all, the first
step, that really is the range that I feel is
appropriate here is a 135 to 168 range.

JA at 359–60.

Additional relevant facts will be provided below as needed.

## SUMMARY OF ARGUMENT

Mr. Braxton entered his guilty plea and was adjudged guilty only

after the District Court committed two Rule 11 errors. The first error was

the District Court impermissibly involving itself in the plea negotiations

and plea process in this case. Absent the District Court explaining to Mr.

Braxton the consequences of proceeding to trial, a task correctly left to

defense counsel, and using phrases such as placing his head in a "buzz saw"

or a "vise" by proceeding to trial, Mr. Braxton would not have waived his trial rights.

The second error was the District Court making a factual finding that negated guilt on one of the essential elements on the offense in this case. Rather than proceeding to sentencing, the District Court should have stopped proceedings and vacated the guilty plea as it made a factual finding that conflicted with its duty to only enter judgment in a case after it finds there to be a sufficient factual basis to support the plea.

Finally, although each error alone merits reversal, should this Court find the errors harmless when examined individually, it can and should consider the cumulative effect of the errors and reverse the judgment in this case under the cumulative error doctrine.

## ARGUMENT

### I. The District Court erred by improperly injecting itself in the plea negotiation process and by counseling Mr. Braxton regarding the plea offer.

### 1. Standard of Review

During the discussion of his *pro se* motion to withdraw his guilty plea, Mr. Braxton stated he was "really encouraged to plead guilty" by something the District Court said the morning Mr. Braxton appeared for trial. JA at 329. Though the trial court never addressed the issue, Mr. Braxton's claim is nonetheless preserved by his statement to the District

Court. This Court therefore should review this matter under the harmless error standard. Fed.R.Crim.Proc. 11(h), *United States v. Davila*, 568 U.S. ___, 133 S.Ct. 2139, 2143 (2013). Under that standard, should this Court find error, the Government would bear the burden of showing the error was harmless. *Id.* at 2146. Specifically, the Government would need to show that the trial court's improper involvement in the plea process did not impact Mr. Braxton's decision to forgo a trial in this case. *Id.* at 2150.

## 2. <u>Discussion</u>

### The District Court's Error

The language of Fed.R.Crim.Proc. 11(c)(1) (herein referred to as Rule 11(c)(1)), could not be any more plain on the matter of judicial involvement in the plea process. The rules states, "The court must not participate" in these discussions. *Id.* Indeed, the rule only authorizes a district court to accept, reject, or defer a decision on the agreement. Fed.R.Crim.Proc. 11(c)(3), (4), (5).[1]

For many years, judicial involvement in plea discussions was permitted, but it was ultimately barred by a 1974 amendment to Rule 11. *See* Advisory Committee's 1974 Note on Subd. (e)(1) of Fed. Rule Crim. Proc. 11, 18 U.S.C.App., p. 1420 (1976 ed). This Court has identified three

---

[1] Rule 11(c)(1) was formerly codified as Rule 11(e), therefore a number of the older cases cited below refer to Rule 11(e), not Rule 11(c)(1) in analyzing the rule.

primary purposes behind this prohibition. First, barring "judicial involvement in plea negotiations guards against 'the high and unacceptable risk of coercing a defendant' to enter into an involuntary guilty plea." *United States v. Bradley*, 455 F.3d 453, 460 (4th Cir. 2006) (quoting *United States v. Casallas*, 59 F.3d 1173, 1178 (11th Cir.1995) (quoting in turn *United States v. Bruce*, 976 F.2d 552, 556–57 (9th Cir.1992)). The degree of involvement is not relevant as "a judge's participation in plea negotiation is inherently coercive." *Id.* (quoting *United States v. Barrett*, 982 F.2d 193, 194 (6th Cir. 1992)). Further, judicial facilitation of a plea indicates a preference on the part of the trial judge that a case resolve by way of a plea and suggests to a defendant, correctly or otherwise, that opting for a trial would cause the defendant to be penalized by the court for that choice. *Id.*

The second and third purposes behind the rule relate to preserving the impartiality of the trial court — in practice and in theory. *Bradley*, 455 F.3d at 460. When a judge becomes involved in a plea negotiation "the judge may feel personally involved, and thus, resent the defendant's rejection of his advice." *Id.* (quoting *United States v. Cannady*, 283 F.3d 641, 644 (4th Cir. 2002) (internal quotation marks omitted)). This could in turn lead a trial court to have difficulty remaining impartial for the remainder of a case's proceedings. *Id.* (citing *Bruce*, 976 F.2d at 557–58). Finally, even if a trial court could remain impartial following a defendant's rejection of a

judicially facilitated plea negotiation, a defendant and the public at large might doubt the judge's impartiality. *Id.* at 260–61 (citations omitted).

The lead case on this issue in this Circuit is *Bradley*. In that case, three defendants began a lengthy trial on a variety of drug and firearms offenses. *Id.* at 456. During trial, the judge excused Government counsel and directly addressed the defendants, both in connection with the evidence against them and likely consequences of a guilty verdict in the case. *Id.* Defense counsel then related to the trial court their efforts at resolving the case by a plea and why those efforts failed. *Id.* at 457.

The trial court then recalled the Government, stated its view of the strength of the Government's case, and recessed the case to see whether the parties could negotiate a plea. *Id.* That trial court then stated that it was aware that the *ex parte* hearing could look inappropriate or coercive, but that it was not intended to be coercive. *Id.*

After the recess, counsel for one defendant said the negotiations broke down because of the Government's sentencing recommendation. *Id.* at 458. The trial court said it was not bound by the recommendation and was "puzzle[d]" why the recommendation was a "stumbling block". *Id.* At that point, another of the defendants began a Rule 11 colloquy, but it ended when he said he was not guilty of one of the counts. *Id.*

There were several other similar incidents over the next two weeks of trial wherein the trial judge commented on the foolhardiness of the defendants' decision to stand trial. *Id.* at 457–59. Later in the trial, all three defendants agreed to plead guilty to the indictment, but only after the trial judge had intervened in one defendant's pending state court case and requested that the Government dismiss a firearms charge against another defendant in order to lower the mandatory minimum sentence facing that defendant. *Id.* at 459–60.

On appeal, the Government conceded the Rule 11 error, but unsuccessfully argued that the defendants did not meet the other requirements of the plain error doctrine. *Id.* at 463–65. This Court disagreed with the Government's arguments and vacated the guilty pleas. *Id.* at 465. In remanding the case for further proceedings, this Court held that the proper remedy for a Rule 11 error of this type is to remand the case for trial before a different district judge than the one initially assigned to the case, due to concerns that the defendant may have doubts as to the impartiality of proceeding anew before the original judge. *Id.* at 465.

In the course of holding that the guilty pleas should be vacated, this Court provided a list of prohibited judicial actions in connection with guilty pleas. These include: initiating plea discussions; advising defendants a plea would be preferable to the outcome of a trial; commenting on the weight of

the evidence; criticizing a defendant's choice to stand trial, and commenting that the Government's sentencing recommendation was not dispositive as to the ultimate sentence as the trial court would determine the sentence. *Id.* at 462. In Mr. Braxton's case, the trial court engaged in nearly all of these prohibited actions.

At the beginning of what was expected to be a trial in Mr. Braxton's, the trial court permitted the Government to place the final plea offer on the record. JA at 233. Permitting the Government to simply state final plea offer on the brink of trial would have been sufficient to make the record clear in terms of potential future litigation relating to *Frye* or *Lafler v. Cooper*, 566 U.S. ____, 132 S.Ct. 1376 (2012) (holding that a defendant has a Sixth Amendment right to receive correct advice regarding plea offers). Rather than beginning jury selection at that point, the trial court engaged in an in-depth discussion with Mr. Braxton regarding the detailed terms of the plea, the operation of the mandatory minimums in the case, and the District Court's role in sentencing. JA at 237–38. The process of communicating and explaining the terms of a plea agreement is the duty of trial counsel. *Frye*, 132 S.Ct. at 1409. While the Supreme Court further held that it may be advisable, as the trial judge initially did here, to permit the final plea offer to be placed on the record before a trial, the opinion is clear that the duty to explain and advise rests with defense counsel. *Id.*

Next, the trial court stated that it was prepared to start trial, but then permitted Mr. Braxton to orally renew a motion to proceed *pro se* at trial. JA at 239. During that conversation, Mr. Braxton expressed certain frustrations with his trial attorney. The exchange between Mr. Braxton and the trial court became heated as the following passage illustrates:

> THE COURT: No. No.
>
> THE DEFENDANT: Well, I can –
>
> THE COURT: Let the record reflect – let me get something straight with you. When I talk, don't interrupt me. You understand that?
>
> THE DEFENDANT: No problem, sir.
>
> THE COURT: Okay. Good. Don't interrupt me. I'll try not to interrupt you. But don't interrupt me while I'm speaking. You understand, Mr. Braxton?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: This judge runs this courtroom and this is judgment day. We've got a jury coming in. We're going to have a trial.
>
> THE DEFENDANT: I'm –
>
> THE COURT: Am I speaking?
>
> THE DEFENDANT: Go ahead, sir.
>
> THE COURT: Good. Don't interrupt me. Okay? Don't interrupt me. When I finish, you speak. Don't interrupt me. Okay?
>
> THE DEFENDANT: Yes, sir.

JA at 245.

Following the District Court once more denying Mr. Braxton's request to discharge his attorney, defense counsel placed on the record that he had advised Mr. Braxton to accept the plea offer. JA at 259–60. The trial court then, after stating it was not part of any negotiation, again explained to Mr. Braxton his sentencing exposure after a trial and how it would be lower if he accepted the plea offer. JA at 260. The trial court further provided another detailed explanation of its role at sentencing, with particular attention paid to the standard of proof it would use regarding drug quantity determinations. JA at 260–62. The District Court's opining as to what sentence faced Mr. Braxton after a trial as compared to his sentence following a guilty plea is one of the acts prohibited by *Bradley*. *Bradley*, 455 F.3d at 462.

The trial court then, after once more stating it was not negotiating, inquired of the parties whether there was some alternate procedure wherein all determinations as to drug quantity and the applicability of mandatory-minimum sentences could be left to the court. JA at 262–64. Whether the District Court viewed this a negotiation or not, this Court should see this passage for what it is — a counteroffer made by the Court on behalf of Mr. Braxton. While this counteroffer was not of the same degree as the judge in *Bradley* asking the Government to dismiss charges, it nonetheless falls into

same rubric of improper judicial involvement in a plea negotiation. *Bradley*, 455 F.3d. at 459–60.

Another similarity between this case and *Bradley* is the willingness of the defendants to enter a plea of guilty to a particular plea offer. In *Bradley*, the defendants were interested in pleading guilty, but not on the Government's terms. *Bradley*, 455 F.3d at 463–64. Here, Mr. Braxton was interested in entering a guilty plea, but only if the Government would agree to a sentence of 120 months' incarceration. JA at 266–67.

In the course of addressing Mr. Braxton after it denied his motion to dismiss counsel, the District Court also made several statements in which it explicitly stated its preference to see Mr. Braxton plead guilty. The first was when it said, "[I]t's just a matter of drug quantity, I am not favorably inclined towards having you go to trial and trigger a mandatory minimum of 20 years, as opposed to a plea offer that's down in the 10 to 15 year range in terms of years of your life." JA at 265. This statement is the type of statement that this Court held to be impermissible. *Bradley*, 455 F.3d at 462. Likewise, the District Court's comment that Mr. Braxton's decision to stand trial was "almost silly" in light of the enhanced mandatory-minimum sentence he faced after trial was also improper. JA at 268. Later, before recessing to permit Mr. Braxton to further discuss the plea offer with his attorney the District Court stated it was "trying to be as fair to you as I can

so that you don't put your head in a buzz saw that makes absolutely no sense." JA at 272. This statement is exactly the kind of statement this Court held that a district court cannot make to a defendant. *Bradley*, 455 F.3d at 462.

Next, the trial court stated that Mr. Braxton's concern in the case, the drug quantity, could be "addressed in another context. It doesn't need to be addressed in terms of a jury trial, where you face the potentiality of a 20-year minimum mandatory where my hands are tied and I can't sentence you to less than that." JA at 276. After the brief recess to discuss the matter, the District Court decided, after speaking with counsel off the record, to take a lunch recess to allow Mr. Braxton more time to speak with his attorney. JA at 276. The purpose of the break was to give Mr. Braxton, "plenty of time to think this through, because I'm trying to make sure a huge mistake is not made here that could be very detrimental to you." JA at 277. In recessing the session, the District Court said, "[A] defendant shouldn't put his head in a vice and face a catastrophic result just over a dispute over drug quantity. That's the point." *Id*. These comments all were examples of the District Court expressing to Mr. Braxton that it believed a trial was not wise in this case and that it wanted to see the case result in a guilty plea.

The trial court also made prohibited comments regarding its sentencing role in relation to the Government's recommendation when it told Mr. Braxton, "The plea offer is you plead guilty to this particular charge, that it goes with the drug quantity that you've essentially had issue with. But the government will argue that you should get a 15 year sentence. And Mr. Tuminelli can argue that you could get a 10 year sentence. And I am free to determine where in the 10 to 15 year range you should be sentenced." JA at 271. This is the exact sort of statement that this Court held violated Rule 11(c) in *Bradley*. *Bradley*, 455 F.3d at 462.

Further, for several reasons this Court should not rely on the District Court's statements that it was not involving itself in the negotiations. First, the task of explaining and advising a defendant regarding a plea offer is one to be undertaken by defense counsel. *Frye*, 132 S.Ct. at 1409. Thus, the District Court's comments that it wanted to ensure Mr. Braxton's rejection of the plea offer was knowing and voluntary should not prevent this Court from finding a Rule 11(c)(1) violation. Second, in *Bradley*, this Court did not credit statements from the trial court that it was not attempting to coerce anyone. *Bradley*, 455 F.3d at 457. Indeed, the record in this case reflects that the "district judge seems to have recognized the existence of a prohibition on judicial participation in plea negotiations" but the District Court's concern over what it viewed as Mr. Braxton

making a mistake "caused the court to overlook the seriousness of the problems inherent in the court's involvement in the plea discussions in this case." *Id.* at 464 n.5.

## The District Court's Error Impacted Mr. Braxton's Substantial Rights

Mr. Braxton appeared before the District Court prepared for trial. Prior to the trial date, the District Court had presided over a pretrial motions hearing that addressed both the seizure of heroin in the case as well as Mr. Braxton's concerns with his attorney. Mr. Braxton even went so far as to seek the discharge of his attorney because of his concerns that his attorney was not pursuing the cross-examination strategy that Mr. Braxton preferred. It was only after a series of lengthy exchanges with the trial court, including the language discussed at length above, that Mr. Braxton decided to change his plea to guilty.

Nothing in the record suggests that Mr. Braxton came into the courtroom prepared to plead guilty. Rather, every indication is that Mr. Braxton came prepared to stand trial and address his concerns over the applicability of the 10-year mandatory-minimum sentence in the case. This Court need look no further than Mr. Braxton's statement that he felt encouraged by the District Court to enter the guilty plea to see his reluctance to plead guilty absent the District Court's intervention. JA at

329. Further, given the frustration with Mr. Braxton the District Court expressed, JA at 245, the record shows that Mr. Braxton could have, at minimum, felt that the District Court might hold his decision to stand trial against him.

But for the District Court's involvement, Mr. Braxton would have stood trial in this case. This Court should therefore find that Mr. Braxton's substantial rights were impacted by the District Court's improper involvement in the plea negotiations and that the Government cannot show otherwise. See *Davila*, 133 S.Ct at 1246–50.

## II. The District Court committed plain error by accepting a guilty plea in this case where it later made a factual finding as to drug quantity that negated the drug quantity element of the offense to which Mr. Braxton pled guilty.

### 1. <u>Standard of Review</u>

Whether there are sufficient facts to support a guilty plea is a matter left to a district court's discretion. *United States v. Mitchell*, 104 F.3d 649, 652 (4th Cir. 1997). Mr. Braxton did not object to a lack of factual basis for his guilty plea in the District Court. This Court therefore reviews this matter under the plain error standard. *United States v. Martinez*, 277 F.3d 517, 526 (4th Cir. 2002). Under that standard, Mr. Braxton must show (1) that an error occurred, (2) that it was plain error, (3) that the error was material or affected the his substantial rights, (4) that the error seriously

impacts the fairness, integrity, or public reputation of the judicial process, *Id.* at 524 (citing *United States v. Olano*, 507 U.S. 725, 731–32 (1992) (other citations omitted)).

### 2. <u>Discussion</u>

A district court may not "enter[] judgment on a guilty plea" unless there is a "factual basis for the plea." Rule 11(b)(3). In order for there to be a factual basis for a guilty plea, there must sufficient evidence as to each element of the offense. *Mitchell*, 104 F.3d at 652. In this case, there was not sufficient evidence as to the drug quantity element and the District Court therefore erred in accepting Mr. Braxton's guilty plea.

The elements of Possession with Intent to Distribute Heroin are: (1) possession of heroin, (2) knowledge of the possession, (3) intention to distribute the heroin. *See United States v. Burgos*, 94 F.3d 849, 873 (1996). When, as here, the Government alleges a specific quantity of drugs that acts to increase both the maximum statutory penalty as well as the mandatory minimum sentence facing a defendant, that drug quantity is also an element of the offense. *See Alleyene v. United States,* 569 U.S. _, 133 S.Ct. 2151 (2013), *Apprendi, supra.* The Rule 11 error in this case related to this element of the offense.

At the time of Mr. Braxton's plea, the District Court heard a recitation of the stipulated facts of the case. JA at 301–303. The stipulation

included a statement that "[a] total of over 1000 grams of heroin was recovered on September 2nd, 2009." JA at 303. The District Court then made a finding that there was "an independent basis in fact sustaining each of the essential elements of the offense." JA at 304. When Mr. Braxton appeared for sentencing, the District Court adopted the Presentence Report's finding that the relevant conduct in the case involved over a kilogram, but less than 3 kilograms of heroin. JA at 340, 382. Later in the proceeding, however, it made the following factual finding:

> I'm not only not assuming that the guideline range is reasonable, but I think here, the realistic way to approach this is that what has always driven this defendant has been a concern over the drug quantity, which is just right on the borderline between 1 kilogram of heroin and less than 1 kilogram
>
> I think a more realistic guideline calculation would be 700 grams, but less than 1 kilogram of heroin. So not the 1 kilogram.

JA at 359–60.

In other words, the District Court made conflicting factual findings in this case. First, it found that there was over 1 kilogram of heroin when it accepted Mr. Braxton's guilty plea. Then, it found that it should base the sentence on there being under a kilogram of heroin. It made that finding, in part, due to Mr. Braxton's repeated, as detailed above, admission of guilt as to the general heroin offense, but disagreement with the Government

regarding the quantity of heroin involved in the case. Given the conflicting factual findings made by the District Court, it was not certain the there was sufficient facts proven as to each element of the offense and the District Court should have therefore not proceeded with imposing a sentence and issuing the judgment.

Rule 11(b)(3) states that absent a factual basis to support a guilty plea, a district court should not enter a judgment. Thus, a district court may accept a plea but later reject it "if factual questions emerge, for instance at sentencing … ." *United States v. Partida-Parra*, 859 F.2d 629, 631–32 (9th Cir. 1988). Here, a factual question regarding whether there was sufficient evidence to support an element of the offense emerged at sentencing, but the District Court erroneously entered a judgment.

This Court has held that "⌈a⌉n error is plain under *Olano* if, at the time of appeal, 'the settled law of the Supreme Court or this circuit establishes that an error has occurred.'" *Martinez*, 277 F.3d at 532 (quoting *United States v. Promise*, 255 F.3d 150, 160 (4th Cir.2001) (en banc)). In this case, the relevant Supreme Court precedents that established the weight of the heroin as an element of the offense all predated the sentencing. *Apprendi* was decided in 2000 and *Alleyene* was decided on June 13, 2013, several days prior to the sentencing in this case. Further, Rule 11 and this Circuit's

cases interpreting it were well established at the time of Mr. Braxton's guilty plea and sentencing. *See e.g.*, *Martinez, supra.*

The District Court's plain error impacted Mr. Braxton's substantial rights. As Mr. Braxton did not preserve this issue, he bears the burden of showing that absent this error, he would not have entered his guilty plea. *Martinez*, 277 F.3d at 532. As detailed above, the record in this case is replete with examples of Mr. Braxton being on the verge of trial, but changing his mind at the last moment. This is not a case where Mr. Braxton entered into a plea agreement early in the case. Rather, 60 jurors were awaiting their summons to the courtroom to begin trial. Mr. Braxton reluctantly entered a guilty plea only after repeatedly claiming that his conduct encompassed under 1 kilogram of heroin. The District Court itself accepted that it involved more than 1 kilogram and than later made a different finding. Given Mr. Braxton's claims and the District Court's doubts as to the quantity of heroin involved in the case, Mr. Braxton would have opted to stand trial but for the District Court's erroneous fact finding.

Finally, this error negatively affects the fairness and integrity of the judicial process. The taking of and acceptance of a guilty plea is "is not a mere formality, but a 'grave and solemn act.'" *United States v. Arteca*, 411 F.3d 315, 319 (2d Cir. 2005) (quoting *United States v. Hyde*, 520 U.S. 670, 677 (1997)). Ninety-seven percent of all federal criminal cases resolve by

way of a guilty plea. *Frye*, 132 S.Ct. at 1409. Where a district court, as the one here, imposes a judgment and a lengthy sentence when it made a finding that there was not sufficient evidence as to an essential element of an offense, the fairness and integrity of the criminal justice system is called into question as it suggests that Mr. Braxton's case was not given the individualized attention that justice demands.

### III. The cumulative effect of the District Court's Rule 11 errors impacted Mr. Braxton's substantial rights, even if each alone were harmless.

#### 1. <u>Standard of Review</u>

As noted above, a Rule 11 error is reviewed under the harmless error standard where it is preserved, *Davila*, 133 S.Ct. at 2143, and by the plain error standard where it is not. *Martinez*, 277 F.3d at 526. In either case, the substantial right implicated by a Rule 11 error is the decision to forgo a trial and plead guilty.

#### 2. <u>Discussion</u>

This Court has adopted the "cumulative error doctrine" in Rule 11 cases where two or more errors, which would be harmless on their own, have the combined effect of a single error that merits reversal. *Martinez*, 277 F.3d at 532 (citing *United States v. Munoz*, 150 F.3d 401, 418 (5th Cir.1998); *United States v. Fernandez*, 145 F.3d 59, 66 (1st Cir.1998); *United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir.1990)). Therefore, even if

this Court were not persuaded that each error detailed above merited reversal, it should still reverse the judgment in this case.

Mr. Braxton waived his right to stand trial at the last moment. The trial defense he wanted to pursue was challenging the Government's calculation as to the quantity of drugs at issue. Rather than being a mere quibble with the Government's theory of the case, the weight of the drugs directly impacted whether he was subject to a mandatory minimum sentence and what that mandatory minimum sentence would be. Thus, even if this Court found that the District Court's errors taken alone were not the prime factor behind Mr. Braxton entering a guilty plea in this case, it should find that taken together the Rule 11 errors in this case were the reason Mr. Braxton did not take his case to trial.

## CONCLUSION

As detailed above, Mr. Braxton's guilty plea came about only after the District Court engaged in impermissible negotiations regarding the plea offer and after it provided the type of counsel to Mr. Braxton properly left to a defense attorney. Later in the case, the District Court made a factual finding that negated an element of the offense, but it nonetheless erroneously entered a judgment of guilty. For either of these reasons alone, or for both taken together, this Honorable Court should vacate the

conviction and sentence in this matter and remand the case for a new trial before a different district judge.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Fed.R.Crim.Proc. 34, Mr. Braxton respectfully requests that this Honorable Court schedule this case oral argument.

Respectfully submitted,

_____/s/_____
Andrew R. Szekely
The Law Offices of
 Andrew R. Szekely, LLC
7501 Greenway Center Drive
Suite 460
Greenbelt, MD 20770
301-358-1048

## CERTIFICATE OF COMPLIANCE

This brief has been prepared in 14-point Bell MT font. Exclusive of the cover page, table of contents, table of authorities, requests for oral argument, and certificates of compliance and service this brief contains 12,403 words.

_____/s/_____
Andrew R. Szekely

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2014, copies of the forgoing Appellant's Brief and Joint Appendix were filed with the Clerk, U.S. Court of Appeals for the Fourth Circuit via hand delivery and electronically using the Court's CM/ECF system which will send notification of such filing to: Assistant United States Attorney John Purcell, Jr., the Office of the United States Attorney, 36 North Charles Street, Suite 400, Baltimore, MD 21202 Jack.Purcell@usdoj.gov.

_____/s/_____
Andrew R. Szekely